Um, we would like to reserve five minutes for rebuttal. Okay, well, we'll see. We'll see what you will see if you can accomplish that. Well, I've given how you went today, I'd be surprised, but we'll see. So, Your Honor, Albert Barker on behalf of the Salmon Headwaters Conservation Association. The Salmon Headwaters Conservation Association is a group of water rights to irrigate their pastures and ranches. Well, let me interrupt you right there. The question really is, the underlying question is, what's the nature of these water rights? You're characterizing them in a certain way. I'm not sure I have in the record enough to tell me whether or not they are water rights that would shelter them from a consultation requirement. I mean, that's your contention, and if they are sheltered from a consultation requirement, of course, they are. The case law is very clear on that point. So, Your Honor, part of that, part of my problem is that we were not allowed to participate in the summary judgment proceedings and put that into the record. However, the record is clear that there are decreed water rights for all of the 23 diversions that are at issue in this records of every one of the individual decrees. We do have a list of those decrees. It's attached to the appendix where it contains the Basin 170 provision by the Department of Water Resources explaining those water rights and explaining that they're all subject to administration by the Department of Water Resources in the state of Idaho. We do have one of the water rights that is at issue in the case as an example that's attached to the appendix as well. Mr. Niter's water right for one of the Salmon River diversions, but there's but the record is well, what happened in this case was that when the when the Colorado Ditch Bill applications were made, one of the reasons I think that the Forest Service didn't act immediately and that's borne out in the administrative record is that they didn't have decreed water rights and so they wanted to wait until the decrees were issued and so in 1999, all of the decrees for this area, this part of the final decree was entered and we decided the case law on that point in our brief that says that that that's a final decree and that this was in a McCarran Act adjudication. Let me the point of the appeal as I understand it is you're arguing that you should have been allowed to intervene as a right at the initial stages here and you're objecting that Judge Windmill allowed you to intervene only at the so-called remedy stage. My understanding of the appeal correctly. Yes, your honor. That's correct. That's okay. Okay. So at the remedy stage, what did your what did you or your client do when you were allowed to intervene? What did you do? Okay, so if I could at the remedy stage, what Judge Windmill said in his order allowing intervention is you're going to be allowed to intervene based upon the fact that the plaintiffs had requested interim remedies and that they may if I rule in their favor, they may ask for actions to be taken immediately that would pending the actions that would be taken immediately pending the the consultation process and that there would be an immediate effect. But what happened was the plaintiff and the Forest Service agreed. Well, we're not going to seek any interim remedies. All we're going to do is impose a deadline for the appeal. I'm sorry a deadline for the biological assessments to be done and at this point, the judge had already ruled without our permission without our participation that we that there was going to be a biological assessment and a nothing for us to enter in to to raise in the form of a remedy. So you're saying you did nothing. No, your honor. I didn't say we did nothing. We participated in the discussions, but we did not. We did not stipulate to the remedy. Did you so you didn't agree to that stipulation? We did not. I've got a separate problem and this goes to both parties here. Is this a final judgment? The judgment entered here seems to be addressed to the Idaho Conservation League and to the Forest Service and you're not mentioned even though you're an intervener as to the second stage. Do we have a final judgment? You didn't agree to the stipulation. No, your honor, but there was a judgment that was entered following the stipulation. Well, I understand that, but a judgment has to dispose of all parties and all claims. I don't see anything in here that disposes of you. Well, your honor, it disposes of our claim because our claim was that there was no duty for the Forest Service to consult in the first place. Can I ask you about that? I understand that that argument is coming through in your brief now very clearly. You're saying this is not a discretionary action, so there's no duty to consult, but can you point to anywhere where you made that argument in your intervention papers so that the district court should have known that you were going to make a different argument than the Forest Service? Yes, your honor. What we did was we made the in our proposed answer. We said that there is no duty to consult period and when but the Forest Service was saying something very similar to that. So then what really makes your argument different is something that I don't see at the stage where the intervention as of right decision was made. So what we said in the in the briefing, which is attached to the. The administrator attached to the excerpts of record is that we were concerned that what was going to happen is that exactly what did happen in this case is that the Forest Service was going to concede that they did have a duty to consult because they had already begun the process of consultation as alleged by the Idaho Conservation League and we said we want to be able to raise that issue because we're afraid that the Forest Service is going to not just say there's no duty to consult. But but ultimately change course and admit there was a duty to consult and the judge said sorry you don't get to raise that argument because of the Forest Service says that there is a duty to there's no there's a duty to consult. You're not entitled to raise the argument. Otherwise, did you ever did you ever argue this is not discretionary and that's why they don't have to consult? Yes, your honor. We put that in our answer to to our brief. Pardon me. Can you point to that? Where is that in the Are you talking about answer? Are you talking about brief? What do you say? I'm talking about our our proposed answer. And and and the let's see if I can find the I don't think I have a copy of it handy, but I can pull it up. It's it's a we when we file a motion to intervene, we attached a proposed answer and that proposed answer we said there is no duty to consult on any of this and we want this case dismissed. That wasn't my question. so I see paragraph forty-nine denies that there is any federal action to require consultation, but I don't see anything about the word discretion there. My my question is you're now making an argument that this is not a discretionary decision and I can't find anywhere where you made that at the time in the district court. Well, your honor the the reason there's no duty to consult is there's no discretion if you if there is discretion, then there is a duty to consult if if there is no duty. I mean under under this court, but maybe if you had said that the district court would have understood that you were saying something different than the Forest Service was saying, but you didn't say that you didn't spell it out in any way that alerted the district court to the idea that you had a different theory of this case. Well, we did have a we did II disagree with you your honor. We did tell the district court in our brief that we expected that the Forest Service was going to make a different argument and concede the duty to consult and we didn't think we wanted to participate in on that issue and the judge Judge Windmill said no you can't you know you just you just made that you say we think that the district the Forest Service is it is going to concede and going to say that we don't have a vested right and therefore consultation is appropriate as to the water rights that you're claiming. I'm looking in your briefs and I've got the same problem that Judge Friedland has. I don't see it. I understand that you want to intervene, but you don't make that argument and and the law of course has to do to consult discretion nondiscretion is very well established as as Judge Windmill knows very well having been reversed in that earlier case some years ago in the opinion by Judge King. Alright, you're going to take okay. So that's right. Yeah. Yeah. So I mean no secret is what the law is. But if we say there's no duty to consult doesn't. There's no secret of what the okay. I've got it. I've got a I've got a slightly different question. I'm very sympathetic to the claim of your clients that if they have a nondiscretionary right that is a vested right that's insulated from any action or consultation under the USA that right should be protected. I got that now is there nothing pursuant to the stipulation is there nothing going forward that will allow your clients to make that argument. So your honor, I think the problem with the with the case moving forward is that what Judge Windmill has done in his opinion is to say that there is a discretionary duty to act and that triggers the obligation. Now when you say Judge Windmill's opinion, what are you referring to? There's a there's an order adopting stipulation on remedy. Is that what you're doing? It's memorandum. Sorry. Sorry, your honor. Memorandum decision and order. Yeah. Page eight of his order. So it's excerpts of record page thirteen. The Forest Service has retained discretion under flip-flopped to place conditions on a ditch bill for the benefit of the listed species. I'm sorry that I I'm sorry. I'm trying to keep up with you. This is Judge Windmill's order of what date is this June seventeen order? No, this is the second order that this is the order. Well, hold on a second. June 17th 2019. I think is right. Yes, that's that is correct. Your honor. Okay. So you're on page eight of that order on help orienting. Where are you on the page? The second or the first full paragraph. Yeah. It says that the Forest Service has retained discretion to place conditions for the benefit of the species. And so that's what Judge Windmill believed required the consultation to begin. And and you're you're conceding that the Forest Service has discretion for an SUP. You're not conceding that it has discretion under a DBE. That's correct. The SUP has already been decided by this court. Let me ask you this right now. Why do they have an injury right now if consultations take place before any action arises from those consultations? So the the injury your honor Judge Bea is that the court has determined that as a result of his analysis that there is a obligation on the Forest Service to exercise control over our clients property rights. That is their ditches and their diversions and their water rights and the court has given them that authority. Now they have yet to do much with it happens and the Forest Service determines there's no problem in these waters with these endangered species. So we're not going to do anything. How would your clients be hurt? So they're hurt in the same way that let's say the judge told me gave me the authority to go on to Mr. Hobart's property and decide and decide whether or not his children were making too much noise and stop them from exercising that whatever they do in their backyard. What but if if no one ever did that, I mean if the court said that but no one ever came on your property to look at your The United States has an authority over these property rights that they don't have. But if that's not the exercise is your claim ripe. Yes, your honor because what this does is it triggers for instance, if you'd argued that this consultation right casts a cloud on our property rights and depreciates the value of the property right by 20% in the marketplace because nobody will pay for my farm. If I've got to be under federal control, that would be a different matter, but you don't claim that I've taken a look at the affidavits of Mr. Christensen and Mr. Humphries. They don't claim any present injury. They say they don't like the idea that the government is exercising or may exercise control over their business, a matter with which I'm very sympathetic. But on the other hand, I don't see any claim of any factual concrete injury. So I don't think you have standing as a matter of ripeness. So Judge Bea, here's here's the concern that we have as as water users and that is once the judge has said that there is a duty to consult because of because the Forest Service has discretionary control over this activity and then the Forest Service comes out and comes up with a biological assessment and then all the ESA consultation takes place and they come back and they require conditions to be imposed. I was a party to this case. My clients were a party to this case. They're going to be stopped or on race judicata grounds prohibited from arguing that there is no discretionary authority. But you're still allowed to go into the to appear the remedy stage and it's exactly the remedy stage at which time you can attack any any conditions imposed. But we don't get to attack whether or not there's a duty to consult in the first place and impose conditions. So we are now put into the question of whether or not these conditions are or not these conditions should have any legal basis in the law to be imposed. Did you put Judge Windmill on notice at the stage where you're arguing intervention as a right that the Forest Service's ability to place conditions on DBE's ditch bill entitlements was was an issue? I'm looking at your briefing. I just don't see that. I mean, yes, we've got an abstract notion that if there's discretion, there's consultation. If there's no discretion, there's no consultation. But did you put an issue that your clients had DBE's that were protected from any ability of Forest Service to place conditions on them? I believe we did, Your Honor, and I I've read through your briefs this morning in preparation for this argument, and I don't see any such argument in them. So are you referring to our briefs before Judge Windmill? Yes, I am. Yeah, the brief before Judge Windmill on the question is whether or not you could intervene as a right. And I look to see, did you argue that you had DBE's that were free from any discretion, free from any ability of the Forest Service to place condition on them? I see no such argument. Your Honor, I don't know that the briefing was that direct, but it was still the idea that what we had when we filed the answer was that there was no duty to consult on these ditch bill easements. There was no duty to consult on 1866 Mining Act rights of way. And we made that clear in our answer. And when we briefed the intervention, we said, we're concerned that the Forest Service is going to come in and exercise control over our rights of way. And what we want to do is protect those property rights. Yeah, I got that. Now I'm looking at the stipulation as to remedy the proceeding in which you participated. And as far as I can tell, you're not making an objection as to this stipulation. You didn't sign it, but in the papers you filed with us, I don't see an objection to it. I'm looking at paragraph two that has some subheads. It runs from the bottom of the first page of the order to the second. The stipulation that requires paragraph two, Forest Service not required to request the initiative consultation by the deadline set forth. If any of the following happened prior to December 31, 2002, a court of law determines or recognize that the water facility located entirely within a right of way held pursuant to the 1886 Act or something else. B, the Forest Service determines the same thing. So why aren't your clients' rights protected here? That is to say, you can go in and say, listen, we're protected. And therefore, there's no consultation. Why doesn't the stipulation protect your client? Because the Forest Service has already said that they will consult. Well, but they said we're not going to consult if there's a decision by the Forest Service with respect to the rights under the 1866 Act are illegal, or if there's a court order. Why can't you seek a court order? Why can't you get a determination from the Forest Service with respect to the DBEs? I don't think you have such a determination at this point, but you could. I guess I disagree, Your Honor, because what the Forest Service did when they went in and briefed the case and argued the summary judgment in front of Judge Windmill is they said, we have ditch bill easements. We intend, we are going to consult, we're going to do it soon. It's not like they're going to, they've said, no, we're going to make a determination. They, what they did in that stipulation was reserve their ability to say there might be a particular diversion where we look at it and we say there's no, there's no may affect determination that we can make, but the Forest Service is committed in the summary judgment proceeding in front of Judge Windmill. We provided you the, in the excerpts of record, their statements where they said we will consult. Okay, so I don't put a whole lot of stock in the idea that the Forest Service is going to turn around and say, sorry, we're not going to consult anymore. Okay, now you sought to reserve five minutes. We've succeeded in taking you over. I think you did. Let's hear from the other side and we'll give you a chance to respond. Thank you. Good afternoon, your honors. Brian Hurlbutt for Plaintiff Appellee Idaho Conservation League. This appeal should be dismissed for lack of standing. In the absence of an appeal from the federal defendants, the Forest Service here, Salmon Headwaters have an obligation to demonstrate its own standing to appeal. And because of the very limited order that the court entered, which just requires starting a regulatory process, they don't face an actual or imminent injury. I understand that their brief is making a lot of merits arguments at this point, and I understand why you'd be saying they need standing to appeal those. But if we understand their appeal to just be, we wanted to intervene as of right, and we were denied. If we only look at whether they should have been given the chance to intervene as of right as a defendant, is there any case that says we have to look at their standing before we can figure out whether they could intervene as of right as a defendant? I don't know that, your honor. I don't think there is. So I understand if we proceed to the merits, how you could make this argument, but I don't really understand why we can't figure out now without asking about standing first, why whether or not they should have been allowed to intervene. Well, I think they do still need standing given what happened in this case and given the limited order, because if this goes back to the district court, I mean, what injury is going to be redressed if they're not already injured? Well, if they're a defendant, though, I mean, I don't know of any case, at least in our circuit, that has said to intervene as a defendant, you have to prove standing. To intervene in district court, you have to... As a defendant in a case. That's right. You have to just establish your right to intervene, which is a different standard than standing. So it seems like they can appeal now based on the standards for intervention as of right without talking about standing first. Now, I think you have an argument they don't meet those requirements, but it seems like that's where our focus should be right now, because that's what this appeal is. Well, but even if they were allowed to go back and undo something that didn't actually injure them in any way and hasn't caused an imminent injury. Well, so maybe you could argue then that we should have a new intervention requirement of standing for defendants, but I don't think we have that currently. I mean, maybe that is what you're arguing now. We should adopt a new rule for intervention as a defendant. No, I don't think there's a need for a new rule before the district court when somebody is trying to intervene. But given the way that this case played out and given that there's no interim remedies that are affecting Salmon Headwaters and their members, I do think it's appropriate to look at standing now and see that there is no injury and nothing to be redressed through a different decision by this court. I think that might be a reason why we shouldn't proceed to the merits unless we look at standing first, but could you address why they are wrong that they should have been allowed to intervene as a defendant? Sure. So Judge Windmill found that Salmon Headwaters was by the Forest Service in this case. And there's a presumption that when parties share the same ultimate objective, that they are adequately represented by the other party. And here, as the record makes abundantly clear, the Forest Service has had the same objective, which is to preserve the status quo, which is to not do Endangered Species Act consultation, to let Salmon Headwaters and its members continue diverting water from public lands on the national forest to their private properties. And that was what was at issue in this case, whether ESA consultation should start or not. And the Forest Service has avoided doing that for decades and decades. That's the same ultimate objective. And so to rebut that presumption of adequate representation requires a compelling showing that the party is going to provide necessary elements to the case. And as was pointed out during the questioning of Mr. Barker, their intervention filings don't do that. They very generally and conclusively state we have additional information or evidence, an argument to make without explaining what those are, why they're necessary to the proceedings or how they might help in any way. Those intervention briefs, it's at 2 ER 65 through 67 and 2 ER 104 through 105. Those are the opening and reply briefs on intervention, the sections about adequate representation. And they really don't provide any of that kind of detail that would show that they actually did have something to offer before the district court. Here's one thing that bothers me about the decision that Judge Windmill reached, and that is the language that was cited to us by Mr. Barker on page 8 of the June order. Here, the forest, I mean, this is just the language from Judge Windmill. Here, the Forest Service has retained discretion under FLTMA to place conditions on a DBE on a dish bill easement. Now, the other side says, wait a minute, they don't have that authority. Is this law of the case now that the DBEs are discretionary and therefore there's no protected right? Is that how we go forward? So that is what Judge Windmill held in his decision on liability. And was it argued one way or the other to Judge Windmill as to whether or not the DBEs were discretionary or non-discretionary? So in Idaho Conservation League's opening brief, we, to satisfy the two-part test under Kerrick Tribe from this court's decision about whether ESA consultations required, we explained for both special use permits and they do involve discretionary control and require consultation. The Forest Service did not argue that prong to about discretionary authority. So Judge Windmill did still state that in his position based on the argument that Idaho Conservation League made in our opening briefing, but the Forest Service had not argued against this. And I don't think Mr. Barker or his clients would be a stop from raising this again because they never argued and lost that issue. Well, wait a minute. But it seems as though Judge Windmill has made up his mind and he's given it in an order. He simply said as part of his order that the DBE allows conditions by the Forest Service. And he's denied intervention on the part of the ranchers to contest that point. Right. He did do that. And that was right. Well, that's right. And that's right because it wasn't raised before him or because it's right on the merits with respect to the consequences of the DBE. It's right on the merits. And how much litigation was there in front of Judge Windmill on that point? I don't think it was much. You asserted something. The Forest Service didn't resist. That's right. And the only party that had an adverse point on that was the ranchers, and they weren't allowed to intervene. That's right, because they didn't articulate in their argument. That's the waiver point, though. So Judge Fletcher was asking you, is it right because of waiver? Is it right on the merits? It seems like you think the answer is both, I guess, as you're turning back to waiver now. Yeah, I think it's right on both. I would feel much more comfortable if this had been a real argument on the merits of the DBE in front of Judge Windmill rather than just having this be a waiver argument. Sure. And I guess it's important to note, though, that Judge Windmill saying that the Forest Service has discretion, as he did in that order, is a little different from the Forest Service then actually multiple steps down the road through the ESA consultation process actually imposing conditions. And I don't know what would preclude Mr. Barker from challenging a ditch bill easement issued to one of his clients that has conditions and saying that any conditions that were in there exceeded the Forest Service's authority and the Forest Service doesn't actually have authority to impose those. Mr. Herbert, Mr. Barker says that in the remedy stage, if they were to challenge, if the ranchers were to challenge the ability of the Forest Service to put any conditions on these DBEs, which they claim are exempt from conditions, then the challenge could only be whether the Forest Service acted contrary to the Administrative Procedures Act, and it was arbitrary and capricious rather than putting the issue about whether the Forest Service had any power at all under the legislation to put conditions on. It seems to me what you're saying is that the decision of the Forest Service to have that power to put conditions on has been determined by Judge Will Mill to exist and that Mr. Barker's clients cannot challenge it. Is that correct? But they can challenge that if and when any conditions are placed on them. Can they challenge it in the remedy stage? Could they challenge it in the remedy stage? I don't know. As you pointed out, they didn't really do anything in response to the remedy. They didn't sign the remedy agreement, but they didn't object to it in any way. Well, could they just bring separate litigation because they weren't allowed to intervene? So they weren't a party here. So they were never a party to the determination that we're talking about. So they wouldn't be bound under normal ESTAPA rules because they weren't one of the parties. They weren't one of the parties, and they never argued and lost that issue. So your argument is that they're not foreclosed from arguing later that one or more of the DBEs is a vested right that's free from any obligation to consult? That's correct. If there's ever a condition imposed on them through a ditch releasement multiple steps down the road, they could challenge that under the APA, saying the Forest Service does not have authority under FLTMA to impose any conditions on a ditch releasement. And unfortunately, we don't have the Forest Service. Here in front of us, you can say that the Forest Service is not entitled to rely on Judge Winsmill's very clear statement here in this that Forest Service has discretion to place conditions on a DBE. You can say that. I'm not sure the Forest Service would agree. I'm not sure either. And you're right. They're not here. We had a lot of problems. They weren't there. I mean, Mr. Barker's clients weren't there at the liability stage. The Forest Service isn't here right now. It sure is nice to have everybody in the room at the same time when you decide things. Judge Fletcher asked a question earlier about whether there's a final judgment. But I think I have a different question about whether there's a final judgment than the one he asked, which is it seems like there's a lot. As you're arguing, there's a lot that still needs to be resolved in this litigation before we figure out whether anything is going to change about this water. And I'm wondering whether there really is any sort of final judgment here when most of what needs to be litigated is still to come, or at least what needs to be determined is still to come. Yeah. And I don't know about the final judgment issue. I did just look at the judgment, and I see what you're saying, Judge Fletcher, that it doesn't mention the interveners. And, yeah, there is a lot to come. And that gets back to both. Well, really back to the standing argument, which is that there's really a lot to come before there's any imminent injury that the interveners might face. But does it even make sense to say we have a judgment yet in this case? I mean, we really don't have a judgment about any action or inaction that's going to happen yet. Yeah, I suppose that's right. I can see why you'd say you suppose that's not right, because if we say there's no final judgment, you get to go on as before. That's right. And I guess I'd like to address the merits quickly, unless you have other questions about intervention or standing or the judgment. When you say merits, the merits being whether or not the Forest Service has the ability to place conditions on a DBE, when you say merits? That's correct. That's correct, Your Honor. If you reach that issue, which you don't necessarily need to, all you have to do is look at FLIPMA, the sections on issuing rights of way and ditch beleasements. That's 43 U.S.C. 1761. That's the section that includes both special use permits, ditch beleasements. The section on ditch beleasements explicitly talks about conditions and multiple provisions. Later on in FLIPMA, 43 U.S.C. 1765 talks about terms and conditions that apply to every right of way. It doesn't say every right of way, except for those issued by ditch beleasement. It talks about all rights of way. It specifically requires the Forest Service to impose terms and conditions to protect fish and the environment and other factors. So if you do reach the merits, it's not just special use permits, also ditch beleasements, the Forest Service has discretion to impose conditions. And all that's required under this Fourth Precedent is to some discretion to influence the decision. You don't need absolute discretion. That's in the Carrick Tribe case. It mentions some discretion about whether or under what conditions to approve an activity. That's also in NRDC v. Jewell, which we cite in our brief, where this court explained that the discretion doesn't turn on the degree of discretion. It's just whether there is any discretion. And the Forest Service undoubtedly has that here with ditch beleasements under the plain language of FLIPMA. So your argument is that Judge Windmill is indisputably correct that the Forest Service has some discretion to impose on DBEs, maybe not unlimited. That is to say, they can do impose certain conditions, but not others. And all Judge Windmill says is that they have some discretion and what that discretion might be, how far that might go, how much the protected right is that insulates from discretion. That's yet to be determined. That's the argument. You're right. That's right, Your Honor. There is some discretion, and the full extent of that discretion is not really ripe for an issue yet. Right. And the Salmon Headwaters Conservation Association really didn't put that at issue, as I see it in their pleading. Okay. Okay. Any further questions from the bench for Mr. Hurlbutt? Thank you, Your Honor. Let's put two minutes on the clock for you. Thank you, Your Honor. I do want to first address your questions earlier about what we said about the authority of the United States to exercise a duty to consult under the ESA on all diversions. If you look at the excerpts of record, page 105, or volume two, page eight of our reply brief, what we said was that we know that the Forest Service's duty to consult doesn't extend to all diversions, and ICL says it does. We don't know what the Forest Service is going to say. I'm sorry to interrupt. You're referring to reply brief. I've got them in front of me. Give me a page site so I can follow along with you. Page eight. Sorry, page eight of the reply memo. I'm on page eight. Yeah, there we are. What paragraph are we on? The second full paragraph. Okay, right. I'm sorry. I'm now with you. Please make your argument. I apologize for interrupting. Okay, so the point is what was going on at the time is the Forest Service was being a bit, shall we say, coy about what position it was going to take. They didn't tell us at the time that they were going to say, well, we're only going to argue that we don't have the duty to consult. And so what we said was we want to be able to make the argument that there's no duty to consult at all, and we don't know what the Forest Service is going to do. So we want to be able to raise that issue. But I'm really confused because I don't even see you arguing here or in your proposed answer that there's no duty to consult about DBE specifically and what your clients or your members have are DBEs. There's just a general statement that there's no duty to consult, but I think you have said you're not even making that argument about the, are they called SUPs, the other category. So I don't understand how Judge Widmill was supposed to have any idea, really, what you were planning to argue. So sorry, Your Honor, Judge Friedman, but what the brief, what the complaint alleged at the time was that there were many years ago. And we agree with that. These Ditch Bill easements were applied for in 1996. Judge Widmill said that this case is the focus of this case is about Ditch Bills. It's about the Ditch Bill easements. And so that's what the whole case was about. And we were trying to explain to the judge that in the 23 easements that are in front of him that included all easements that the court, that the Forest Service had said were qualified as a Ditch Bill easement, that we wanted to make the argument that those didn't apply, that there was no duty to consult on those. And so we were unclear to what extent the Forest Service was going to deviate. And it turns out they deviated extremely and said, oh, we give up. We do have to consult. We just don't have to do it yet. And frankly, Judge, 25 years after the applications were made, Judge Widmill said, get on with it. And so are there still pending applications for Ditch Bill easements from your clients that the Forest Service has not ruled on for 25 years? Yes, Your Honor. All of them, except for there were six where we do have a judgment of right away under RS-2339. Is there anything in the Stipulation that will allow you to go forward? Because the Stipulation provides that they won't be subject to consultation if there's a decision by the Forest Service about water rights under the 1866 law. Is there a time frame under which, like a sequence, that the Stipulation resolves that before they can go forward with consultations under Section 702 of the ESA that the Ditch Bill easements applications have to be resolved? It says if it is resolved, but I don't see anything in there that says they have to be resolved before the consultation happens. So, Your Honor, under the Stipulation, the Forest Service agreed that they would issue biological assessments and begin the consultation by December of 2022. And so as part of their process of going through and evaluating their biological assessments, what the Forest Service says in that Stipulation is, we're not going to do it if there is a judgment that there is a RS-2339 and 1866 Mining Act right away. Boy, I get that. So if we have an adjudication by the Forest Service on one of these applications for a DBE, and if the result of the application is the Forest Service says this is protected against the exercise of discretion and imposition of conditions, then it's exempted, obviously, from the consultation process. But what seems to be missing from the Stipulation is any requirement that before the consultation begins, we get a determination of all pending DBE applications. I mean, this is a softball question for you. Don't misinterpret this as a hardball. So the problem is that no one, the ICL did not file a mandamus action, nor did we, saying you must issue a Ditch Bill easements. OK, but here's the hardball question for you. You participated or had the option to participate in the remedy negotiations that produced the Stipulation. Yet there's nothing in what's before us that objects to the Stipulation. Well, we didn't sign the Stipulation. Well, but you're not objecting to us. You didn't object to the district court. I mean, this is unsatisfactory from your standpoint, as far as I can tell, because what you really need is a sequencing Stipulation that says all the applications on the DBEs have to be determined before you go forward with the consultation. But that's not in there, and you didn't ask for it. You're not asking for it now. Well, Your Honor, what happened is that Judge Windmill said in his order is that the Forest Service had to consult before it issued the DBEs. So it's not that the sequencing has already been determined by the judge. He says, Forest Service, go consult. And then once you consult, then you can issue Ditch Bill easements. Okay, well. So the other thing, just if I could, Your Honor, real quick, is that you said, I think you asked the question of whether or not there was the ability of the Forest Service to say there's no duty to consult once we issue the Ditch Bill easements, and that's not the case in that Stipulation. The Stipulation requires Ditch Bill easement consultation unless the Forest Service makes a determination of no effect under the ESA. How does it make that determination come before the consultation? That's not part of the consultation process, figuring out whether there's an effect? It's a preliminary action, Your Honor, where the action agency says, is what we're doing going to have an effect? If the answer is no, then they are not obligated to continue the consultation or to engage. You're trying to stop them from even going that far, I thought, right? You don't want them to do any of this. That's correct. We believe that because these are vested rights, that under the Ditch Bill, that the United States has no authority to interfere with any water rights or any use of water or any diversion of water, and 505A doesn't protect, doesn't save that because this came second, the Ditch Bill came second, and it said you will not do those things. And that is absolutely clear in both the statute and the legislative history of the Ditch Bill. You think you can't raise that at the remedy stage as a complete defense? If you all tell me I can, I will, not to be flip, Your Honor, but I was concerned. What is your reason for thinking you can't? I'm not really understanding why you think a stopple would apply to your clients. Because we were a party to the case. We were allowed intervention as a party. But you weren't allowed intervention as of right. That's the whole reason you're talking to us. No, we were allowed intervention of right on the remedy stage, and that under the Stringfellow case, that gives us party status. So I was concerned what that meant was that we would be precluded from raising this issue in a later proceeding. But if this issue was decided at the phase where you weren't allowed to intervene, it seems like you weren't a party to that part. Your Honor, I have never seen a decision that dices that issue so carefully. Okay, any further questions on the bench? Okay, thank you. Thank you. Both sides. Well, thank both sides for the argument. Idaho Conservation League versus Salmon Headwaters Conservation Association submitted for decision, and that finishes our arguments for today.  Thank both sides. Thank you, Your Honor.
judges: W. Fletcher, Bea, Friedland